CHARLES N. FISHER v. DOW BROS.

No. 2520.

1. **Failure of Title to Land.**—A purchaser of land entitled by his contract to a good title who releases to an adverse claimant can not avoid the payment of the purchase money save by showing absolutely that his vendor had no title whatever and especially that he did not have the title represented in the contract.

2. **Demand—Waiver.**—Where a party to a contract is entitled to demand before suit and after maturity of the obligation repudiates it, he thereby waives his right to demand and is not entitled to it before suit.

3. **Damages—Value.**—In a suit for damages for the failure to deliver a stipulated quantity of lumber at a time and place specified, and there is testimony of value subsequent to the maturity of the obligation and before suit, it is not error to render judgment for such value with interest from the filing of the suit.

4. **Same.**—Where in consideration for land bought the vendee agreed to deliver a given quantity of lumber at a named time and place it would seem that the measure of damages for the refusal to deliver the lumber would be the highest market price at the place and after maturity, but without interest.

APPEAL from Polk.    Tried below before Hon. Edwin Hobby.

November 29, 1884, Dow Bros., the appellees, brought suit against appellant Fisher and others to recover $250 and interest on an obligation made September 1, 1883, and due September 1, 1884, by Fisher to Mrs. H. E. Moore or order.   The obligation was to deliver to her 50,000 feet of first-class merchantable pine lumber, to be sawed by said Fisher in such quantities and dimensions as she might order, to be delivered on board cars at Fisher's mill at Livingston as early as convenient after receipt of order therefor, etc.   It was conceded that half the lumber had been delivered and alleged that the balance not delivered was of value $10 per 1000 feet; demand was alleged and ownership of the obligation by plaintiffs.   Vendor's lien was alleged and sought to be enforced against four acres of land, with improvements, near the town of Livingston, and block 27 in said town, conveyed to Fisher by said Mrs. H. Moore at the making of the obligation sued on.   The defendant Fisher pleaded a failure in part of the consideration for the obligation, viz., of title to block 27, alleged to be of value of half the lumber.   The pleadings were sufficient to admit the testimony condensed in the findings of facts by the court as follows:

"I find the facts to be in this case:

"That on the first day of September, 1883, Mrs. H. Moore sold and conveyed to defendant C. N. Fisher the land described in the petition, containing about four acres, with improvements, the place of her residence, and block No. 27, the latter being a separate tract and situated in the town of Livingston, Polk County.

"That Fisher executed his obligation in writing described in the petition contracting to deliver to her order fifty thousand feet of lumber; that he had paid twenty-five thousand feet, estimated to be of the value of ten dollars per thousand feet.

"That Mrs. Moore executed a deed to defendant Fisher on September 1, 1883, reserving a vendor's lien upon the land.

"That at the time of the contract the title to the land was represented to be good, the vendor claiming title through G. W. Davis and title by limitation.   There was at the time of the purchase of the land by Fisher a conveyance on record from one H. L. Choate and wife to the county of Polk for one hundred acres of land, which included the block No. 27.

"That some time after taking possession under the deed Fisher was notified by the county judge of Polk County that the block 27 was embraced in the deed from Choate and wife; that the county claimed the

land and had leased it for ninety-nine years to the Presbyterian Church. No suit was instituted by the county or any other party to evict Fisher, but Fisher conveyed his title to the block 27 to the Presbyterian Church, of which church he was a member.

"Prior to the institution of this suit Fisher and Tom Moore, acting for his mother Mrs. H. Moore, had some correspondence about the land, in which Fisher declined to make any further payment on the note than the twenty-five thousand feet of lumber already paid, alleging as his reason 'that the title to the block 27 had failed.' The note had been endorsed by Mrs. Moore to Tom Moore and by him to the plaintiffs in May or June, 1884. Prior to the suit C. W. McKinnon, an attorney, saw Fisher and talked with him about the balance due which Fisher refused to pay. This was after the note was due and had been sent to him for collection. * * *

"Fisher claimed that the chief inducement to the trade was the block 27; that he would not have bought but for that block. He estimated its value at $250. Moore valued it $75.

"After the conveyance Fisher sold the four acres and improvements for $200 gold and two lots in Livingston worth about $75.

"I find the value of the twenty-five thousand feet remaining unpaid, and which Fisher refused to pay, was in May, 1884, the date of demand, worth ten dollars per thousand feet, aggregating $250 due."

"The conclusions of law drawn from the foregoing facts are that defendant Fisher had notice of his vendor's title by limitation, as also constructive notice from the record of deeds in Polk County at the time of his purchase that there had been a deed to the county from Choate and wife; that there was no eviction of defendant by any legal process; that Fisher had notice of whatever defect, if any, there was in the title to block 27; that having taken possession under the deed from his vendor and conveyed the land he was not in a position to resist payment of the balance of the purchase money, and that judgment should be rendered for plaintiffs for $250, with eight per cent interest from June 1, 1884, to the present time, and costs." (July 7, 1887.)

Judgment was rendered for $301.60, principal and interest and costs. Fisher appealed. Other necessary facts are in the opinion.

*R. E. Corry,* for appellant. — 1. The court erred in its conclusions of law that "Fisher had notice of his vendor's title by limitation," in that there was no evidence adduced on the trial of this cause showing title by limitation or otherwise in Fisher's vendors; no such evidence appears in the statement of facts and the court does not find such to be a fact in its conclusions of law and fact. Norris v. Ennis, 60 Texas, 84; Price v. Blount, 41 Texas, 475; Clark v. Mumford, 62 Texas, 535.

2. The deed from Moore to Fisher was an executory contract and

warranty deed, the title remaining in the vendors and not vesting in the vendee. Fisher bought with full reliance on the statement of title made to him by his vendor. He did not rely on his own knowledge of the title. This being the case, before Fisher can be held responsible it must be shown that he knew at the sale of the defect in his vendor's title with an understanding between them that Fisher took only such a title as his vendors could give him. Cooper v. Singleton, 19 Texas, 266; Brown v. Hoff, 5 Paige, 235; Estell v. Cole, 62 Texas, 700; Rawle on Cov. for Title, 4th ed., pp. 41, 42, 565; Clark v. Mumford, 62 Texas, 535; 2 Wait's Act. and Def., 388; Peck v. Hensly, 20 Texas, 673.

GAINES, ASSOCIATE JUSTICE.—Harriet E. Moore and her son Tom Moore conveyed to appellant a lot in the town of Livingston and a tract of land near the town of four acres, for which he executed a contract in the form of a promissory note for the delivery to Harriet Moore or order 50,000 feet of lumber on the 1st of September, 1884. Mrs. Moore transferred the obligation to her son, to whom Fisher delivered one-half of the lumber before the obligation became due. Tom Moore then assigned the contract to appellees. Fisher having declined to deliver the lumber the assignees brought this suit to recover damages and obtained a judgment.

The defenses set up in the court below were (1) that Tom Moore, who made the sale, represented to the defendant that the title was good, but that the title had wholly failed; and (2) that no demand was made upon defendant for the lumber before suit.

The defendant testified that "Tom Moore at the time of the trade represented that the title to the land was perfectly good; that they had a good title from George W. Davis and also had title by limitation." It was agreed that the survey of which the lot was a part "was titled by the government of Mexico" to M. L. Choate, and defendant introduced a deed from Choate to Polk County for a portion of the league and showed that the lot was a part of the land so conveyed, but made no further proof as to the title. He also testified that being threatened with a suit and being satisfied his title was not good he had conveyed the lot to the Presbyterian Church to whom the county had leased it for ninety-nine years.

If defendant after having conveyed such title as had been granted to him by the vendors of the lot, and after having placed it out of his power by such action to reconvey to them or their assigns such title as he had received, could be permitted at all to defend against his contract on the ground of failure of title, it could only be by showing absolutely that the vendors had no title whatever and especially that they did not have such title as they represented. He made no offer to show that his vendors did not have title by limitation, and we think this was fatal to this special defense.

The contract provided that the lumber should be delivered upon the cars upon the order of Mrs. Moore, and that it should be of such dimensions as she should direct. No order for the lumber was proved, and it is claimed that in the absence of proof of a demand according to the terms of the agreement the plaintiff was not entitled to recover. It was however shown that in a short time after the obligation matured the attorney for the plaintiffs called upon the defendant for a settlement, and that he was told by the defendant that the title to the lot had failed and that he made no offer to the attorney to deliver the lumber. He had, previously informed the plaintiffs that he would not deliver it on account of the failure of title to the lot. This must be deemed a waiver of any further demand. A special demand stating the quantities and dimensions of the lumber after this would have been but an empty form. Besides the contract stipulated that the lumber was to be delivered upon the cars, and it is to be presumed that the parties contemplated that it was to be shipped to such purchasers as the holder of the agreement might be able to procure. After defendant's refusal to comply plaintiffs could not have contracted safely with third parties for the delivery of lumber from this source. We think no further demand than that shown in the evidence was necessary.

It is also insisted that there was no competent proof of the value of the lumber at the time and place of delivery. The lumber was to be delivered in Livingston. The testimony of the witness Moore as to the price in Belton was irrelevant. The only other evidence as to value was that of a witness testifying at the place of delivery that he "thought that lumber was worth about $10 per thousand feet." There is a bill of exceptions in the record which shows that defendant objected to the proof of the value of the lumber offered upon the ground that the evidence was not confined to the time and place of delivery and the quality of the lumber mentioned in the contract. The objection was overruled, but what particular testimony was admitted over the objection does not appear. A modification was appended to the bill by the trial judge, who states that "the testimony showed that the value of the 25,000 feet of lumber unpaid was $10 per thousand feet, making $250. No specific objection was made to this." The defendant subsequently testified in the case, and the presumption is that he knew the value of the property he had contracted to deliver, and that if it was not worth at the time of the delivery the amount testified to by plaintiffs' witness he would have said so. We think that the evidence in connection with plaintiffs' failure to testify upon the point warranted the finding of the value of the lumber at the time of the breach of the contract, although the witness did not expressly say the lumber was worth so much at that date. The fact that the evidence showed only the value of lumber generally could not have prejudiced the defendant, because his contract called for first class mer-

chantable lumber. If lumber generally is worth $10 per thousand feet, first class lumber must be worth as much. The lumber having been paid for in advance the plaintiffs were entitled to recover the highest market price of the lumber at any time from the demand to the day of the trial, but it may be not to interest from the date of the breach. Masterson v. Goodlett, 46 Texas, 403. But the judgment and findings of the court show that the court found the value of the property at the date when the lumber should have been delivered, and we think the facts and circumstances in evidence warranted the conclusion of value so found.

It is also complained that the court erred in its conclusion of law that the measure of plaintiffs' damage was the value of the lumber with interest from January 1, 1884. This is erroneous, but the error is evidently clerical. The judgment shows upon its face that in computing the damages interest was allowed from the day on which the suit was brought. The evidence was that defendant was called upon for a settlement and declined it after the contract matured and before the suit. The exact date was not fixed, and hence the court, construing the evidence upon this matter most favorably to the defendant as it should, only allowed interest from the date of the institution of the suit.

This disposes of the material questions in the case. There are other assignments of error to the findings of the court, but they relate to matters which in the view we take of the case were not material to its proper disposition.

There being no material error in the proceedings of the court below the judgment is affirmed.

*Affirmed.*

Opinion January 18, 1889.